IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-01271-PSF

JAMES T. POWELL,

    Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

    Defendant.

## ORDER ON SOCIAL SECURITY APPEAL

This matter was set for oral argument on April 10, 2006 at 8:30 a.m., which date was VACATED by Order dated April 5, 2006 (Dkt. # 20). The Court has received the arguments and submissions of counsel, and enters the following Order.

## I. BACKGROUND

Plaintiff James Powell appeals from the decision of the Commissioner denying social security disability benefits. The Commissioner's decision became final on May 13, 2005, when the Appeals Council notified plaintiff that if found no reason to review the Administrative Law Judge's ("ALJ's") decision of October 1, 2004. Plaintiff timely filed his appeal in this Court on July 11, 2005 (Dkt. # 3). The Social Security Administrative Record ("AR") was filed on September 14, 2005 (Dkt. # 9). The Court has jurisdiction to review the final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

Mr. Powell filed his claim for benefits on July 9, 2002, claiming a disability onset date of May 20, 2002. AR 69. In his Disability Report, Mr. Powell explained that "chronic pain, caused from surgery to my lower back and surgery to my neck" constitutes his disability, forcing him to quit his job as a cook. AR 107. The medical record shows that he had neck surgery following a car accident in 1983, AR 140, surgery for a herniated disk in 1994, AR 141-42, and an anterior cervical discectomy and fusion in 1998, AR 204-05, 234.

Plaintiff sought medical attention again in 2001 for neck pain, and was diagnosed with a new bulging disk in his spine. AR 230. In January of 2002, plaintiff was diagnosed with a failed fusion of the bony graft and was prescribed a hard cervical collar. AR 226-27. This apparently helped, as X-rays indicated a stable fusion in a visit on February 5, 2002, and the treating physician recommended continued use of the hard cervical collar and a bone growth stimulator. AR 224-25. According to plaintiff, he tried to continue working, but was "finally unable to continue as of May 20, 2002." AR 115. On July 21, 2004, Dr. Velma Campbell completed a Colorado Department of Human Services Initial Medical Examination form, and concluded that plaintiff was disabled "to the extent [he is] unable to work at any job for a total period of six (6) or more months." AR 260. To become employable, Dr. Campbell opined that Mr. Powell needed stabilization of his cervical spine as well as training in a new type of work. AR 261.

The ALJ held a hearing on August 2, 2004, at which plaintiff and a vocational expert, Dennis Duffin, testified. AR 18, 307-325. Mr. Powell was represented by

counsel. The ALJ issued his decision denying benefits on October 1, 2004, finding Mr. Powell "not disabled within the meaning of the Social Security Act." AR 18, 26.

## II. THE ALJ'S DECISION

In his written decision, the ALJ denied plaintiff's application for benefits at step five of the five-step evaluation process. *See generally Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). In reaching his determination, the ALJ first determined that plaintiff has not engaged in substantial gainful activity since the alleged onset date. AR 19. He further found that plaintiff suffered "severe impairment from the residual problems from the cervical and lumbar surgeries" and "severe impairment from the mental conditions" as reported by plaintiff and evaluated by a psychologist. AR 19-20. The ALJ found, however, that plaintiff's condition–either physical or mental–did not meet any listed impairments of Appendix 1 to Subpart P of the Social Security Regulations. AR 20-21.

Turning to plaintiff's residual functional capacity, the ALJ determined that Mr. Powell "is able to perform the full range of light exertional activity at the unskilled level." AR 25. This determination was made after considering seven primary factors: daily activities; location, duration, frequency and intensity of symptoms; precipitating and aggravating factors; medication; treatment; any measures other than treatment used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. AR 22. Although he found severe physical and mental impairments as noted above, the ALJ "decline[d] to accept that such impairments result in the degree of limitation alleged by the [plaintiff]." *Id*. After reviewing the testimony,

the ALJ found the credibility of Mr. Powell's subjective complaints "only fair at best." *Id*. He gave little weight to the assessment by Dr. Campbell, inferring that her conclusions were based on "records from a period before the claimant's cervical fusion stabilized, which was before the alleged onset date, and therefore not relevant." AR 23. The ALJ compared spinal X-rays from before the alleged onset date and those taken and read in the summer of 2004, concluding that "the cervical fusion continues to be normal, without evidence of hardware complication, fracture, or loosening," further supporting his decision to disregard Dr. Campbell's "anachronous assessment." *Id*.

The ALJ further noted that Mr. Powell "did not allege under oath any specific functional limitations due to his neck and back condition, only generally claiming that he was disabled and in a lot of pain."[1] AR 24. According to the ALJ, a functional capacity assessment on July 26, 1999–before the alleged onset date–by an agency expert represented the best evidence of Mr. Powell's physical condition during the relevant period, as the X-rays of his spine in 2004 were the identical to those taken and used in the '99 assessment. AR 24, *see also* AR 203-10. Because the 1999 assessment concluded that Mr. Powell had no exertional limitations and could perform certain work-related activities, *see* AR 204, the ALJ found that he could similarly now do a full range of light exertional activity. AR 24.

---

[1] The hearing transcript reflects that Mr. Powell was not asked directly by the ALJ or his counsel any questions about specific functional limitations. *See* AR 308-19. That leaves a gap in the record that might have been clarified by more questioning. *See Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993) (ALJ's duty to develop record exists even if claimant is represented by counsel).

In evaluating plaintiff's mental impairments, the ALJ gave little weight to the depression and personality disorder diagnoses of Dr. Madsen, the evaluating psychiatrist. *Id.* The ALJ found that the objective examination itself showed "very little or no abnormality" and the diagnoses were based almost solely on Mr. Powell's statements and allegations, which were already deemed unreliable by the ALJ. *Id.* Further, the ALJ gave no weight at all to Dr. Madsen's functional limitations assessment, finding that it conflicted with the psychiatrist's own observations and test findings. *Id.* Plaintiff's mental impairment, deemed "severe" by the ALJ giving plaintiff "the benefit of the doubt," AR 20, was thought by him to be "adequately accommodated by limitation to unskilled work." AR 25.

After determining that plaintiff was "able to perform the full range of light exertional activity at the unskilled level" (AR 25), the ALJ turned to step four of the evaluation process to determine whether plaintiff was able to perform any past relevant work activity. Because such activity involved work beyond his current capacity, the ALJ assumed "the burden of production of evidence" in order to prove that a "significant number of other jobs [are] available in the national economy to which the claimant can make a vocational adjustment." *Id.* Based on his earlier determination that plaintiff was able to perform the full range of light unskilled work, the ALJ used Grid Rule 201.21 of the Medical-Vocational Guidelines to determine that plaintiff was not disabled within the meaning of the Social Security Act. *Id.*

### III.  PLAINTIFF'S APPEAL

Mr. Powell alleges that the ALJ erred in his denial of benefits for five reasons. First, he contends that the ALJ improperly rejected Dr. Campbell's functional capacity assessment as inconsistent with x-rays instead of recontacting her for clarification. Pl.'s Op. Br. at 4.  Second, the ALJ's RFC finding is insufficient because it is not specified on a function-by-function basis, prohibiting meaningful review of the decision. *Id.*  Third, the ALJ's finding is not supported by any relevant medical evidence, but only the ALJ's own impressions and outdated medical information.  *Id.* at 4-5.  Fourth, the ALJ failed to properly assess whether plaintiff's mental impairment meets a listed impairment at step three.  *Id.* at 5.  And finally, plaintiff contends that the ALJ improperly relied upon the grid rules in step five because plaintiff suffers from nonexertional impairments.  *Id.*  Defendant argues that substantial evidence on the record as a whole supports the ALJ's determination that plaintiff was not disabled. Def.'s Resp. Br. at 7.

### IV.  STANDARD OF REVIEW

When a district court reviews the Commissioner of Social Security's decision to deny social security benefits, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001).  The court's job is to decide whether substantial evidence in the record supports the Commissioner's factual findings as a whole and whether the Commissioner applied the correct legal standards.  *Id.*, *Castellano v. Sec'y of Health and Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994).

Substantial evidence is defined as more than a scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See e.g. Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989); *Soliz v. Chater*, 82 F.3d 373, 375 (10th Cir. 1996). There must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987). Put another way, if other evidence in the record overwhelms the Commissioner's determination, or if only a mere scintilla of evidence supports the decision, it is not based upon substantial evidence. *Ricketts v. Apfel*, 16 F. Supp. 2d 1280, 1287 (D. Colo. 1998). The Commissioner's decision may also be reversed for application of the wrong legal standard. *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) (citing *Frey*, 816 F.2d at 512).

**V. ANALYSIS**

    **A. Rejection of Dr. Campbell's Functional Capacity Assessment**

The ALJ was required to consider Dr. Campbell's opinion, as an opinion from an examining physician, and provide "specific, legitimate" reasons for rejecting it. *See Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). According to the written decision, the ALJ rejected Dr. Campbell's opinion because it was "based on past medical records" and it could be "inferred" that such records were from before the alleged onset date and therefore not relevant. AR 23.

Although medical records indicate that Dr. Campbell examined plaintiff, AR 270, and her diagnosis of cervical spine instability was based only "in part" on past medical

7

records and diagnostic tests, AR 272, the record does not reflect which records she relied upon. The record is clear that Dr. Campbell conducted no new tests. *Id.* As the ALJ noted, the administrative record does not contain any tests by other physicians on or after the alleged onset date other than an X-ray from June 7, 2004 which found "no evidence of hardware fracture or loosening . . . [and] essentially complete bony fusion." AR 273. Therefore, the ALJ did not err in rejecting the opinion of an examining physician whose opinion was not based on relevant objective medical evidence. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *see also Doyal*, 331 F.3d at 764 (ALJ must consider several specific factors in weighing a medical opinion; ALJ's rejection of medical opinion in reliance on single factor was supported by record and proper).

Plaintiff contends that the ALJ had a duty to recontact Dr. Campbell to explain the ambiguity in the medical record regarding which past diagnostic tests she had relied on. 20 C.F.R. § 404.1512(e)(1) ("We will seek additional evidence or clarification from your medical source when the report of your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). However, the ALJ did not reject Dr. Campbell's opinion on the basis of an ambiguity as to *which* tests she relied upon, but rather on the basis that the record revealed *no* tests after the alleged onset date to support a disability finding. Thus there is no ambiguity in the record, but merely a dearth of relevant evidence supporting the opinion in question. *Cf. White*, 287 F.3d at 908 ("For it is not the rejection of the . . . physician's opinion that triggers the duty to recontact the

physician; rather it is the inadequacy of the 'evidence' the ALJ 'receives . . . .'");
*McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (ALJ has obligation to obtain additional information from physician where "ALJ believed that the matter was open to question").  The record was adequate to support the ALJ's finding that no objective medical evidence from the relevant period supported Dr. Campbell's opinion, and the duty to recontact was thus not triggered.

### B.  RFC Finding

An ALJ's RFC assessment at step four "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . .  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  SSR 96-8p; *see also Baker v. Barnhart*, 84 Fed. Appx. 10, 13 (10th Cir. 2003) (requiring ALJ to identify abilities on a function-by-function basis).  Here, the ALJ did not make the required function-by-function determination before deeming plaintiff able to complete light work, and the Court must remand for such a determination.  *See Hodgson v. Apfel*, 172 F.3d 62, *4 (10th Cir., Feb. 3, 1999) (Table) (remanding where ALJ failed to make function-by-function analysis, reasoning that without the required underlying findings, no meaningful evaluation of the ALJ's decision could take place).

Such a remand is especially appropriate here, where the ALJ looked to a functional capacity assessment from July 1999 by Dr. Ketelhorn (an agency non-examining physician, *see* Pl.'s Reply at 5 and AR 23), and concluded that plaintiff's condition after the alleged onset date was approximately the same as it was in July

1999, when plaintiff was cleared to perform the full range of light work. AR 23-24. This assessment, however, was not only well before the alleged onset date, but also before plaintiff's diagnoses in 2001 with a new bulging disk in his spine (AR 230), and in 2002 with a failed fusion of the bony graft (AR 226). Plaintiff's ensuing complications may have affected his abilities, even assuming as the ALJ did that plaintiff's cervical fusion had stabilized. A function-by-function determination of plaintiff's present abilities is necessary.

### C. Substantial Evidence for ALJ's RFC Determination

Based on the Court's conclusions in part B, *supra*, and the decision to remand, a determination on this issue is premature.

### D. Plaintiff's Mental Impairment Assessment

Plaintiff did not allege a disabling mental impairment at any time in his application for benefits until the August 2, 2004 hearing. The only evidence of mental impairment, other than plaintiff's testimony at the hearing, is a one-time evaluation completed by Dr. Madsen at the office of plaintiff's attorney on July 27, 2004. *See* AR 267-69. Dr. Madsen's opinion that plaintiff is disabled (AR 269) is "not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the Secretary." *Castellano*, 26 F.3d at 1029. The ALJ, in making this determination, found that Dr. Madsen's opinion was not supported by the psychologist's own observations, and was based significantly on plaintiff's own statements and allegations, which the ALJ found unreliable. AR 24. Additionally, the lack of ongoing treatment, or any prior treatment for that matter, was inconsistent with a finding of disability. The ALJ discounted as "fair at best" plaintiff's subjective mental complaints including plaintiff's

claim of financial inability for psychological treatment, as "[h]e takes three medications for pain [Flexeril, Elavil and Vicodin], but says he can't afford depression medicine." AR 22. On this record, the Court believes that the ALJ's determination on this point was supported by substantial evidence.

### E. Use of the Grid

Because this case is remanded for a proper RFC determination at step four, the Court need not address plaintiff's argument that the ALJ erred at step five in using the grids to determine plaintiff is not disabled. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (declining to address claimed error at step five after remanding for additional proceedings at step three). However, the Court notes that the ALJ's determination that plaintiff suffered from a "severe impairment from the mental conditions" at step two (AR 20), and "moderate difficulty in maintaining social functioning" (AR 21), may well be inconsistent with the ALJ's later dismissal of these nonexertional impairments at step five. Thus some clarification on this point may be required. *See Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) ("[A]n ALJ may not rely conclusively on the grids unless he finds . . . that the claimant has no significant nonexertional impairment."); *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991) (noting that "resort to the grids is particularly inappropriate when evaluating nonexertional limitations such as pain and mental impairments"); *see also Clifton*, 79 F.3d at 1010 (remanding for error at step three but noting plaintiff appeared "to have raised a meritorious argument" in alleging error at step five). The Court of course takes no position on the merits of these issues.

## VI. CONCLUSION

For the reasons set forth above, the Court ORDERS the case REMANDED to the Commissioner of Social Security for further proceedings as to the proper use of Dr. Campbell's testimony and the plaintiff's RFC determination. It is FURTHER ORDERED that the hearing set for April 25, 2006 at 2:00 p.m. is VACATED.

DATED: April 20, 2006

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge